**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

| | |
|---|---|
| RECOM CORP. | |
| Petitioner, | **Civil Action No. 16-3320 (SRC)** |
| v. | |
| MILLER BROTHERS, a Division of WAMPOLE-MILLER, INC., | **OPINION & ORDER** |
| Respondent/Counter-claim Petitioner, | |
| v. | |
| RECOM CORP. and RECOM AG, | |
| Counterclaim Respondents. | |

**CHESLER**, District Judge

    This matter comes before the Court upon the filing by Counterclaim Respondent Recom AG of a renewed motion for judgment on the pleadings (Docket No. 96, "Recom AG Br."), pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(2). Counterclaim Petitioner Miller Brothers opposes this motion (Docket No. 99, "Miller Bros. Br."), and Recom AG has submitted a reply brief (Docket No. 104, "Recom AG Reply"). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Counterclaim Respondent Recom AG's motion is denied.

    **I.    Background**

    This case concerns whether arbitrators violated the Federal Arbitration Act by granting Miller Brothers an award against Recom Corp. and its "parents, successors, affiliates and

1

assigns"—which arguably may include Recom AG—in a contractual dispute over the delivery of solar panels to construction projects in New Jersey. In its renewed motion for judgment on the pleadings, Recom AG argues that this Court should dismiss Miller Bros.' counterclaim because it is a non-signatory to the supply agreement and is not subject to general or specific *in personam* jurisdiction. Miller Brothers counters that this Court has personal jurisdiction because 1) Recom AG was responsible for the procurement of the solar panels, in furtherance of the contract; 2) the counterclaim in the answer to the demand for arbitration asserted costs incurred by Recom AG in connection with the contract; and 3) the corporate structure of Recom Corp. and Recom AG, as well as the circumstances behind contract formation, indicate that Recom Corp. functions an alter ego of Recom AG, such that the indisputable personal jurisdiction of Recom Corp. extends to Recom AG.

### a. The Solar Panel Supply Agreement

In June 2014, electrical contractor Miller Brothers entered into a supply agreement with Recom Corp. to procure solar panels for three construction projects located in New Jersey. The supply agreement defines two parties to the contract, "Contractor" and "Vendor," which are respectively defined as Miller Brothers and "Recom Corp. . . . its parents, subsidiaries, affiliates, and assigns." Docket No. 100, Ex. 11 ("Agreement") 7-9. The parties dispute whether Recom AG is a parent, successor, affiliate or assign of Recom Corp. See Recom AG Br. 2. The Agreement includes a New Jersey choice-of-law provision, as well as the mandatory arbitration of disputes in New Jersey. Agreement 17-20.

Although it is a 'Vendor' to the supply agreement, Recom Corp. did not procure the solar panels itself. Rather, its intention was to procure those solar panels from Recom AG.[1] To that end, Recom Corp. entered into an oral supply agreement with Recom AG (LT Dep. 111:25-112:14), and subsequently transferred the half million deposit from Miller Brothers to a bank account held by Recom AG. Docket No. 100, Ex. 31 (Recom Corp.'s Bank of America Business Advantage Checking Account summary for June 11, 2014 to June 30, 2014). The terms of this agreement were not memorialized in a written contract, and there were no supporting invoices or documentation. LT Dep. 111:25-112:14. Within weeks of receiving this deposit, Recom AG entered into supply agreements to procure solar panels from third-party manufacturers in Taiwan and Italy. See Docket No. 100, Ex. 10 (supply agreement between Recom AG and TSEC Corporation).; Docket No. 100, Ex. 30 (supply agreement between Recom AG and Eclipse Italia SRL). The contracts Recom AG entered into with these third-party manufacturers provided that the solar panels were to be shipped to New Jersey (id.), in order for Recom AG to fulfill Recom Corp.'s supply contract with Miller Brothers.[2]

   b. **Arbitration and Litigation**

After executing the Agreement, Recom Corp. and Miller Brothers disputed which party was responsible for paying tariffs on the imported solar panels. When negotiations proved unsuccessful, Miller Brothers filed and served a demand for arbitration in November 2014 against Recom Corp. and its parents, successors, affiliates, and assigns. Docket No. 19 (Verified

---

[1] Docket No. 100, Ex. 27 (Deposition Transcript of Laert Tunyan, "LT Dep.") 111:8-1112 ("Q. At the time that Recom entered in this contract with Miller Brothers, how did it intend to procure the panels that it sold Miller Brothers? A. From Recom AG.")
[2] Docket No. 100, Ex. 28 (Deposition Transcript of Hamlet Tunyan, "HT Dep.") 64:8-11 ("Q. So is it accurate to say that the purpose of this agreement with TSEC was to procure panels for Miller Brothers? A. Yes.").

Answer and Counterclaim of Respondent Miller Brothers, "Miller Bros. Counterclaim") ¶ 53. The parties dispute whether Recom AG appeared in the arbitration. See Recom AG Reply Br. 6.

Aram Spartalian, a general manager and in-house counsel for Recom AG, appeared at arbitration as the "Director of the Legal Department of RECOM Corp." Docket No. 76, Ex. M (Recom Corp. Answer and Defenses to Claimant's Claim and Counterclaim, "Recom Corp. Arb. Ans.") 13. Spartalian regularly provided general reports to the Tunyan brothers to apprise them of the arbitration proceedings. HT Dep. 66:19-68:19. In its arbitration answer, Recom Corp. asserted counterclaims to recover costs incurred to procure solar panels pursuant to the agreement, including for contracts that Recom AG entered into with the foreign solar panel manufacturers. Recom Corp. Arb. Ans. 10-11. Recom Corp. was not permitted to arbitrate its counterclaim—including to recover costs associated with Recom AG's contracts—because it failed to pay the requisite AAA fees. Miller Bros. Counterclaim ¶ 60; Docket No. 19, Ex. F, 3 (September 28, 2015 letter from AAA arbitrators, ordering that "Respondent [Recom Corp.] shall pay all AAA fees and/or deposits that are currently due . . . [or] it shall be prohibited from asserting any counterclaim at the hearing."). Arbitration was conducted in December 2015, and in March 2016 the arbitration panel held that "Recom and its parents, successors, affiliates and assigns, jointly and severally, shall pay to Miller Bros. the total awarded amount of $1,850,099.31." Docket No. 19, Ex. J (Final Award of Arbitrators), 29.

In June 2016, Recom Corp. filed a petition before this Court to vacate the arbitration award, alleging that the arbitrators exceeded their authority and violated its due process rights by rendering the award against unidentified 'parents, successors, affiliates, and assigns' who were "not party to the arbitration and did not sign the arbitration agreement." Docket No. 1, 1. In its answer, Miller Brothers asserted a counterclaim against both Recom Corp. and Recom AG. In

May 2017, Recom AG filed its first motion for judgment on the pleadings, arguing among other things that this Court lacks personal jurisdiction. Docket No. 74. This Court denied the motion without prejudice and granted Recom AG leave to renew the motion after the completion of jurisdictional discovery. Docket No. 78. In its renewed motion, Recom AG raises similar arguments regarding this Court's lack of personal jurisdiction.

### c. The Relationship Between Recom Corp. and Recom AG

Recom Corp. is a closely held corporation owned 50% by each Tunyan brother,[3] who are likewise the corporation's only two officers: Hamlet is president, and his brother Laert is treasurer and secretary. LT Tr. 31:14-24; 33:6-8. The Tunyan brothers are the only two employees, and Recom Corp. has no board of directors and no administrative, operational, or sales staff. Id. Recom Corp. uses Aram Spartalian—general manager and in-house counsel at Recom AG (Id. 38:3-5)—as its legal counsel.[4]

Like Recom Corp., Recom AG is a closely held corporation that is owned 50% by each Tunyan brother. As with Recom Corp., the Tunyan brothers are Recom AG's only two officers

---

[3] See LT Tr. 32:9-13 HT Tr. 54:6-12. In its response to interrogatories, dated July 17, 2017, Recom Corp. stated that it is owned 100% by Hamlet Tunyan. See Docket No. 100, Ex. 29 ("Recom AG Resp. to Ints.") 7. However, Laert and Hamlet have testified in their depositions—conducted in January 2018, subsequent to the response to interrogatories—that they each own a 50% share in Recom Corp., so there is sufficient evidence to make a prima facie case that each Tunyan brother owns a 50% share in Recom Corp.

[4] There is sufficient evidence that Aram Spartalian works as legal counsel for both Recom Corp. and Recom AG, although the Tunyan brothers appear to disagree about his exact role in the Recom corporate family. Cf. LT Dep. 37:18-21, 40:1-5 ("Q. Does Recom Corp. have a legal department? A. No, Recom AG has a legal department. . . Q. When Mr. Spartalian provides legal services in his capacity as a lawyer, is he acting on behalf of Recom AG? A. Well, he can do that for both the Corp. and the AG.") with HT Dep. 58:7-9, 59:7-9 ("Q. Does Recom Corp. have a legal department? A. Yes, it's Aram Spartalian. . . Q. Is Aram Spartalian a member of the legal department for Recom AG? A. I believe so, yes.").

and each bears the title "Managing Director." Recom AG Resp. to Ints. 11. Recom AG only has four employees. LT Dep. 35:22-25.

After Recom Corp. transferred the half million-dollar Miller Brothers deposit to Recom AG, it had an account balance of just $2,955. Recom Corp. is unable to meet its debt obligations as they become due. LT Dep. 92:5-8. Recom Corp. cannot and does not manufacture solar panels or procure them from third parties, but instead sources them from Recom AG. LT Dep. 158:3-159:23.

In its public branding and website, the Recom family of corporations does not distinguish between the various Recom entities. Docket No. 100, Ex. 24 (print-out from www.recom-solar.com/about_us/ and www.recom-solar.com/support/). Hamlet and Laert Tunyan—the only two employees of Recom Corp—use an email extension that is common to both corporations, as do other senior employees at Recom. Docket No. 100, Ex. 26. Before it executed the Agreement, Miller Brothers interacted with five individuals: Hamlet and Laert Tunyan, Aram Spartalian, Robert Benedict, and Isabelle Christensen. As noted, the Tunyan brothers are the sole owners of both Recom Corp. and Recom AG, as well as the former corporation's only two employees and officers. Spartalian works as legal counsel for both Recom Corp. and Recom AG, and appeared at arbitration as "Director of the Legal Department" at Recom Corp. Robert Benedict identified himself to Miller Brothers as "VP Sales North America" of "Recom Ltd," and in publicly available information, Benedict identifies himself both as affiliated with Recom Corp. and as "Vice President Sales North America" for Recom AG. Docket No. 100, Exs. 4, 5, and 6. Isabelle Christensen identified herself to Miller Brothers as "VP of Operations" of "Recom Ltd.," and she identifies herself in publicly available information as "Vice President of Marketing" for Recom AG. Docket No. 100, Exs. 7, 8.

## II. Legal Standards

In its motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), Recom AG argues that this Court does not have personal jurisdiction over it and should accordingly dismiss Miller Bros.' counterclaim under Rule 12(b)(2). To survive such a motion, Miller Brothers bears the burden of establishing a prima facie case of personal jurisdiction. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Miller Brothers may only satisfy this burden through the presentation of affidavits or other competent evidence. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). To determine whether Miller Brothers has made out a prima facie case, this Court must accept the uncontroverted allegations in the counterclaim as true and construe any factual disputes in its favor. Miller Yacht, 384 F.3d at 97. If the nonmoving party satisfies this burden, dismissal under Rule 12(b)(2) is not appropriate.

### a. General and Specific *In Personam* Jurisdiction

This Court has personal jurisdiction over Recom AG to the extent provided under New Jersey state law. See Fed. R. Civ. P. 4(e); Miller Yacht, 384 F.3d at 96. New Jersey's long-arm statute, codified at N.J. Ct. R. 4:4-4, authorizes personal jurisdiction over non-resident defendants such as Recom AG to the extent consistent with "due process of law" in the United States Constitution. See also Avdel Corp. v. Mecure, 58 N.J. 264, 268 (N.J. 1971) ("[W]e will allow out-of-state service to the uttermost limits permitted by the United States Constitution.").

There are two forms of *in personam* jurisdiction: general jurisdiction, where the court "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum"; and specific jurisdiction, for suits "arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia S.A. v. Hall,

466 U.S. 408, 414 nn. 8–9 (1984); see also Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 563 (3d Cir. 2017).

Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose," or general jurisdiction in the forum State. Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014). For an individual, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Foreign corporations like Recom AG are only subject to general jurisdiction when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. Only a limited set of circumstances establish general jurisdiction over foreign corporations. See id. at 757-58 (courts should avoid "exorbitant exercises of all-purpose jurisdiction" and should "decline[] to stretch general jurisdiction beyond limits traditionally recognized").

For specific jurisdiction, the constitutional inquiry is based on the relationship between the defendant, the forum, and the litigation. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Walden v. Fiore, 571 U.S. 277, 284 (2014). In the Third Circuit, the inquiry into specific jurisdiction over nonresident defendants has three parts. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation marks omitted). Physical entrance into the forum is not necessary (id. at 4760), but rather the defendant must have engaged in "a deliberate targeting of the forum." O'Connor, 496 F.3d at 317.

Second, the litigation must "arise out of or relate to" the defendant's activities in the forum (Helicopteros, 466 U.S. at 414), such that the defendant "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Only forum contacts specifically related to the cause of action support the exercise of specific jurisdiction. Miller Yacht, 384 F.3d at 107-8 (While forum contacts "that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant, . . . [e]mphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction."). Neither the Supreme Court nor the Third Circuit has "adopted a definitive approach to the relatedness requirement" (O'Connor, 496 F.3d at 320), but instead courts should "approach[] each case individually and take[] a realistic approach to analyzing a defendant's contacts with a forum." Miller Yacht, 384 F.3d at 100

Finally, in addition to the purposeful availment and relationship requirements, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" Burger King, 471 at 476 (quoting Int'l Shoe Co. v. Washington, 66 S.Ct. at 160). To address this fairness question, courts may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Miller Yacht, 384 F.3d at 97 (quoting Burger King, 471 U.S. at 477).

### III. Discussion

As this Court's personal jurisdiction has been contested, the nonmovant Miller Brothers bears the burden of establishing a prima facie case through affidavits and other competent

evidence. After a careful and thorough review of this record—including the operative Agreement, the depositions of Hamlet and Laert Tunyan, Recom AG's contracts with third-party solar panel manufacturers, and other documents produced as exhibits during arbitration—this Court is satisfied that Miller Brothers has presented two separate prima facie grounds for this Court to exercise personal jurisdiction over Recom AG. As there is sufficient evidence that a trier of fact could find that this Court has personal jurisdiction over Recom AG on either ground, this Court will deny Recom AG's renewed motion for judgment on the pleadings pursuant to Rule 12(c) and 12(b)(2).

### a. Miller Brothers Has Made a Prima Facie Showing that Recom Corp. Had Apparent Authority to Bind Recom AG to the Agreement

Under New Jersey law, an agent may bind a principal to contracts with third-parties for acts that are within the agent's actual or apparent authority. New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (N.J. 2010). Apparent authority arises "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. (quoting Restatement (Third) of Agency § 2.03 (2006)). Where the principal's actions cause the third party to reasonably believe in the agent's apparent authority, the principal will be bound even where the agent "is not an 'actual agent.'" Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338 (N.J. 1993). Such authority "may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from particular circumstances in the case." Sears Mortg. Corp, 134 N.J. at 338. To bind the principal on the basis of the agent's apparent authority, the third party must establish (1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established alone and solely by proof of [conduct by] the supposed agent; (2) that it relied on the agent's apparent authority to act for a principal; and (3)

that the reliance was reasonable under the circumstances. AMB Prop., LP v. Penn Am. Ins. Co., 418 N.J. Super. 441, 454 (N.J. App. Div. 2011)

There is sufficient evidence in the record for a trier of fact to determine that Miller Brothers reasonably believed that Recom Corp. had apparent authority to bind Recom AG and that Miller Brothers relied on such apparent authority when executing the Agreement. Recom AG and Recom Corp. share numerous similarities, including the same logo, the same email address, the same website, and the same European headquarters. The only two owners and officers of both companies are brothers Hamlet and Laert Tunyan, who were both directly involved in negotiating the contract with Miller Brothers. Recom AG's general manager and in-house counsel, Aram Spartalian, acts as legal counsel for Recom Corp. and prominently figured in the negotiation and execution of the contract. The only two other individuals in the Recom corporate family that Miller Brothers interacted with, namely Robert Benedict and Isabelle Christensen, likewise identify themselves as senior employees for Recom AG. Given the actions by Recom AG's owners, officers, and senior employees, a trier of fact could find that Miller Brothers reasonably believed that Recom Corp. was entering the contract on behalf of Recom AG.

The reasonableness of Miller Brothers' belief that Recom Corp. had apparent authority to bind Recom AG when executing the Agreement is underscored by the actions of the Recom corporate family during arbitration. While Recom AG argues that "Recom Corp. was the only entity specifically named or notified of the proceeding" (Recom AG Br. 2), Miller Brothers actually served its demand for arbitration on "Recom Corp., its parents, successors, affiliates, and assigns." See Docket No. 19, Ex. B. This formulation reflects the Agreement's definition of 'Vendor.' And, in response to this demand for arbitration, the Recom Corp. asserted

counterclaims based on contracts that Recom AG had entered into with third-party solar panel manufacturers. As such, there is sufficient evidence to support Miller Brothers' reasonable belief that Recom AG manifested that Recom Corp. had apparent authority to bind it to the Agreement. Accordingly, dismissal under Rule 12(b)(2) is not appropriate.

### b. Miller Brothers Has Made a Prima Facie Showing that Recom Corp. Functions as an Alter Ego of Recom AG

As a general principle, the corporate form "allow[s] shareholders to invest without incurring personal liability for the acts of the corporation." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001). This protection generally applies with equal force when the shareholder is another corporation. See United States v. Bestfoods, 524 U.S. 51, 69 (1998). When the corporate form is abused, however, both New Jersey state and federal common law provide courts the equitable remedy known as veil-piercing—also known as "alter ego liability"—to disregard the corporate entity and impose liability on the corporation's shareholders or parent corporation. Pearson, 247 F.3d at 484 (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. 1979)).

The Third Circuit and the New Jersey Supreme Court have similar standards for piercing the corporate veil. See Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988) ("New Jersey is thus in line with the [Third Circuit] approach taken generally on this issue."). Under New Jersey law, piercing the corporate veil is appropriate where (1) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent" and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." Craig, 843 F.2d at 149; see also State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473 (N.J. 1983). While the standard issued by the New Jersey Supreme Court comprises two distinct components—parent

12

corporation domination and preventing injustice—the Third Circuit standard instead considers various factors, including:

> gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

Craig, 843 F.2d at 150.These factors are not "elements of a rigid test," but rather illustrate whether "the debtor corporation is little more than a legal fiction." Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 194 (3d Cir. 2003) (quoting Pearson, 247 F.3d at 485).

The second component of the Ventron standard derives from the equitable nature of veil piercing and the need to prevent injustice or fundamental unfairness. Trustees of Nat. Elevator, 332 F.3d at 194 ("While piercing of the corporate veil is an equitable remedy . . .and therefore the situation must present an element of injustice or fundamental unfairness, ... a number of these factors can be sufficient to show such unfairness.") (internal citations omitted). To satisfy this prong, the "Plaintiff need not prove common law fraud, however, but rather must meet the less rigid standard of 'fraud, injustice, or the like.'" Kuibyshevnefteorgsythez v. Model, 1995 WL 66371 at 15 (D.N.J. Feb. 6, 1995) (quoting Ventron, 94 N.J. at 500); Trustees of Nat. Elevator, 332 F.3d at 194 ("[O]ur test does not require proof of actual fraud as a prerequisite for piercing the corporate veil."). This prong may be satisfied by showing the intermingling of corporate identity and deliberate undercapitalization of the subsidiary. OTR Assocs. v. IBC Sec'ys, Inc., 353 N.J. Super. 48, 52 (N.J. App. Div. 2002) ("And the hallmarks of that abuse [of the corporate form] are typically the engagement of the subsidiary in no independent business of its own but exclusively the performance of a service for the parent and, even more importantly, the

undercapitalization of the subsidiary rendering it judgment-proof.") (citing Ventron, 94 N.J. at 501).

In many cases where New Jersey and Third Circuit courts have declined to pierce the corporate veil, the parent entity was a large, publicly-traded corporation with a board of directors and numerous officers. See, e.g., Ventron, 94 N.J. 473; Cape, 843 F.2d 145. In contrast, New Jersey "courts have not hesitated to pierce the corporate veil of a closely held corporation in order to impose personal liability" on a principal who has used the corporate form "as his personal business conduit." Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 283 (N.J. App. Div. 1993). To pierce the veil against closely-held corporations, courts look to a similar set of factors, such as "whether corporate formalities have been observed and whether the corporation was undercapitalized; . . . [as well as] a principal's siphoning away of corporate funds, an absence of corporate records, the failure to pay dividends, and the role of other officers or directors."). Greentree Mews Assocs. v. Cwanger Bros. Inc., 2013 WL 5640157, at *1 (N.J. Super. Ct. App. Div. Oct. 17, 2013).

Veil piercing is particularly appropriate under New Jersey law for 'closely identified corporations,' where "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 394 (N.J. App. Div. 1989). Where such corporations operate in each other's names, a court "need not consider with nicety which of them ought to be held liable for the act of one corporation for which the plaintiff deserves payment." Id. at 394 (internal citations omitted);

Miller Brothers has provided sufficient evidence in support of the various Craig factors to present a prima facie case for piercing the corporate veil.

(1) Gross undercapitalization: Recom Corp.'s June 2014 bank statement indicates that it received the $527,630 deposit from Miller Brothers on June 11 and immediately transferred nearly the entirety to Recom AG the next day, leaving a balance of just $2,955. Docket No. 100, Ex. 31. Further, Recom Corp. is unable to meet its financial obligations as they become due and must rely on Recom AG to fulfill its procurement contracts.

(2) Failure to observe corporate formalities & absence of corporate records: Recom Corp. does not use inter-company service agreements with Recom Corp. LT Tr. 83:25-84:9. Recom Corp. transferred the half-million dollar deposit without any invoices or documentation under an oral contract that was never memorialized to writing. LT Tr. 111:25-19. Indeed, Laert Tunyan testified that he "do[es no]t know" whether the sales and purchases of different companies should be documented in written records. LT Tr. 112:20-113:2.

(3) Non-payment of dividends & non-functioning of other officers or directors: As closely-held corporations solely owned by the Tunyan brothers, Recom Corp. and Recom AG do not pay dividends to other shareholders. Neither corporation has a board of directors, and the Tunyan brothers are the only officers of both corporations.

(4) Mere façade for dominant stockholders: Recom Corp. has no employees besides the Tunyan brothers, and thus has no sales staff, in-house counsel, or administrative support. As a result, when Recom Corp. agreed to buy the solar panels from Recom AG (LT Tr. 112:5-11), this oral agreement was between the Tunyan brothers and themselves.

In addition to providing evidence of the Craig factors in support of veil piercing, Miller Brothers has also provided a prima facie case that there was "serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Stochastic Decisions, 236 N.J. Super. at 394. As noted, Miller Brothers interacted with five individuals during the drafting and negotiation of the Agreement, all of whom hold senior positions across the various Recom entities: 1) Laert Tunyan and 2) Hamlet Tunyan, who both own 50% shares in Recom Corp. and Recom AG, and who are both corporations' only two

officers; 3) Aram Spartalian, general manager and legal counsel at Recom AG and "Director of the Legal Department" of Recom Corp.; 4) Isabelle Christensen, who identifies as "VP of Operations" for Recom Ltd. And "Vice President of Marketing" at Recom AG; and 5) Robert Benedict, the "VP Sales North America" at Recom Ltd., "Vice President Sales North America" for Recom AG, and whose LinkedIn profile indicates an affiliation with Recom Corp. The substantial overlap in responsibilities these individuals held between Recom Corp. and Recom AG reinforces Miller Brothers' prima facie case for alter ego liability.

Because Miller Brothers has provided competent evidence to support a prima facie case that Recom Corp. functioned as the corporate alter ego of Recom AG, this Court is satisfied that that the indisputable personal jurisdiction of Recom Corp. may be imputed to Recom AG. Hudson Cty. Carpenters v. V.S.R. Const. Corp., 127 F.Supp.2d 565 (D.N.J. 2000) (judgment defendant's contacts with New Jersey imputes personal jurisdiction to alter ego non-judgment defendant); Toll Bros., Inc. v. Fields, 2011 WL 463090, at *4–5 (D.N.J. Feb. 4, 2011) (upholding arbitrator's corporate veil piercing to non-signatory parent corporation under alter ego liability, based on "a review of the terms of the Purchase Agreement and consideration of the relationship between the parties"). As such, this Court will deny Recom AG's motion pursuant to Rule 12(c) and 12(b)(2).

## IV. Conclusion

**IT IS** on this 16th day of August, 2018;

**ORDERED** that Defendants' renewed motion for judgment on the pleadings (Docket No. 96), pursuant to Rule 12(c), for lack of personal jurisdiction pursuant to Rule 12(b)(2), is **DENIED.**

                                                    /s Stanley R. Chesler\_\_\_
                                                    STANLEY R. CHESLER
                                                  United States District Judge